Sutton *v.* Morgan.

30 629
47 242

Eliza Ann Sutton and others, appellants,

*v.*

Alpheus Morgan, executor, &c., respondents.

1. The evidence of three out of four disinterested, subscribing witnesses to a will (the fourth being dead at the time of the trial), as to the testamentary capacity of a testator ninety-three years old,—*Held* to outweigh that of ten other witnesses, all of whom were related to

41

the testator, either by blood or affinity; the fact also appearing that the testator's attending physician, although subpœnaed by the cave-ators and present at the trial, was not examined.

2. An application by a caveator under *Rev.*, *Orphans Court*, p. 756, ¿ 19, which provides that the orphans court may, on the application of a caveator or executor, certify the questions raised by any *caveat* into the circuit court of the county, for trial before a jury, was not made until after all the testamentary witnesses had been examined on the part of the proponents.—*Held*, that it was too late.

Appeal from decree of Hunterdon orphans court.

*Mr. W. D. Allen* and *Mr. J. T. Bird*, for appellants.

*Mr. J. N. Voorhees*, for respondent.

THE ORDINARY.

This appeal presents for review the decree of the orphans court of Hunterdon county, admitting to probate a paper purporting to be the last will and testament of David Morgan, deceased, late of that county. The testator was a man of very advanced age when he made the will. He was about ninety-three years old. The caveators, who are two of his daughters, allege that he had not testamentary capacity; that, if he was possessed of such capacity, the will was the result of undue influence on the part of his son Alpheus, the executor, and the wife of the latter. Alpheus and his wife lived on his farm with him, and he was under their care. The caveators also insist that the orphans court erred in denying, as they did, their request, made during the trial, to certify into the circuit court, under the nineteenth section of the orphans court act, the questions involved in the controversy.

Though the testator was very old and infirm when he made the will, the evidence shows, beyond all question, that he was possessed of full testamentary capacity. He not only knew well who the persons were whom he desired to benefit

by his disposition of his property, but he knew and weighed well their respective claims.   He gave his reasons for making his will, and gave the instructions for drawing it; and it is shown that it was drawn strictly in accordance with them.   The will itself, therefore, is plenary evidence of his capacity.   The disposition of his property which it contains, was made in the presence of some of his neighbors, who were selected for witnesses to his will; and it was made without aid or prompting from any one, in any respect.   At his suggestion, all four of those persons signed their names as witnesses to the will.   When it was stated that only two witnesses were necessary to answer the requirements of the law, he requested that they would all sign, nevertheless, in order, as he said, "to make it stronger;" and he thereupon humorously related an anecdote, precisely in point.   The four witnesses were all men of business; they had known him for a long time, and they were unanimously of opinion that he was fully competent to make a will.   The three of them who were sworn as witnesses on the trial (the other was dead when the trial took place), give most unequivocal and convincing testimony to his fitness to make a testamentary disposition of his property.   Of these witnesses, one had known him for at least twenty-five years, another for nearly forty, and the other for about thirty.   Two of them witnessed the execution of a codicil to the will, and from their testimony he appears to have shown the same capacity then.

It is not necessary, nor would it be profitable, to refer to their testimony in detail.   The testimony in opposition is mainly that of Lavinia Blue, Mary Kise and Eliza Ann Sutton (two of whom are the caveators, and all of them legatees under the will); Solomon Kise, husband of Mary Kise; John Sutton, the husband of Eliza Ann Sutton; William B. Sutton, Jr., the son, and Catharine Sutton and Mary Ann Keyser, daughters of the two last-named persons, and Isaac M. Keyser, husband of Mary Ann Keyser.   They testify, indeed, that the testator, at the time of making the will,

was incapable of recognizing his own children and grand-children, and in a state of imbecility, but it is not only to be remarked that the three survivors of the four persons who were called to witness his will (some of whom witnessed the codicil to it, which was made more than nine months after-ward), bear clear and unqualified testimony to the contrary, but it is noteworthy, and a most significant circumstance, that the testator's physician, who was in attendance at the trial, brought there as a witness on behalf of the caveators, was not called.

If the testator was in a condition of imbecility when the will and codicil were made, his attending physician would have been able to give important testimony on that subject. And further, there appears in the testimony of all the wit-nesses called by the caveators, facts in reference to the testator's conduct and conversation, which are not only inconsistent with, but are fatal to, the proposition that he was, when he made either the will or codicil, in a condition of imbecility. And it may be added, that the testimony of the witnesses on the part of the caveators is by no means of such weight as to countervail that of the three witnesses to the will, who were sworn, who have no interest in the disposition of the testator's estate, are unconnected with his family, are apparently free from prejudice or bias, and had abundant opportunity to form a judgment as to his mental condition.

Nor is there any evidence of undue influence on the part of Alpheus or his wife. Indeed, there is no evidence of influence at all. It is charged that they poisoned his mind against Solomon Kise, his son-in-law, by false statements in regard to an occurrence between Kise and Alpheus, in which, as the testator said, the former undertook to meddle in the testator's business, an occurrence of which he spoke to those who were called to witness his will. There can be no doubt that that occurrence did take place. The testator told his daughter, Lavinia Blue, about a week after the will was made, that he himself saw it. As to Alpheus, there is

Sutton v. Morgan.

not only no proof of influence, but he appears to have been slow even to ask a small business favor of his father, preferring that his wife should do it in his behalf. As to her, the facts relied upon are of no weight. The theory of the caveators is that the testator was an imbecile, and, being such, was under the control of Alpheus and his wife, or of the latter. But the proof is clear that he was of sound and disposing mind, and there is no evidence whatever that his disposition of his property by his will was not, in all respects, his free and voluntary act. As was said in *The matter of the will of Gideon Humphrey*, 11 *C. E. Gr.* 513, 521, whether, in any given case, there was undue influence, must be determined from the facts; it is not a presumption, but a conclusion.

The counsel of the caveators urge that the orphans court, under the section of the act above mentioned, are bound to certify the questions involved in the controversy into the circuit court, on the application of either the caveators or executors, whenever requested so to do, whether before the trial has been commenced in the orphans court, or at any time during the trial. It appears, in this case, that it was not until after the testamentary witnesses had all been examined that the caveators applied to the court to certify the questions involved into the circuit court. The application was made too late, and the orphans court therefore properly refused to certify. It should have been made before the trial was begun.

The decree of the orphans court will be affirmed, with costs, to be paid by the caveators.